UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OJIH OJI,

                  **Plaintiff,**

      *- against -*

THE SOCIAL SECURITY ADMINISTRATION
(SSA),

                **Defendant.**

**12 Civ. 7338 (KMK)(PED)**

<u>**REPORT AND
RECOMMENDATION**</u>

TO:    **THE HONORABLE KENNETH M. KARAS,
      UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Plaintiff Charles Ojih Oji, proceeding *pro se*, brings this action pursuant to the Social

Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c), challenging determinations made by

Defendant Social Security Administration (the "SSA") on Plaintiff's applications for benefits. Dkt.

No. 2. Plaintiff also demands an award of compensatory and punitive damages based on his claim

that he was discriminated against and otherwise mistreated by SSA employees.

Presently before this Court, pursuant to an order of reference, Dkt. No. 8, is the

Commissioner of Social Security's (the "Commissioner") motion to dismiss for lack of subject

matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and (6) of the Federal

Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure. Dkt. Nos. 20 (Statement of Def. Pursuant to Local Rule 56.1), 24

(Notice of Mot.), 25 (Decl. of Julio Infiesta ("Infiesta Decl.")), 26 (Decl. of Stephen Conte ("Conte

Decl.")), 27 (Decl. of Mark Ledford ("Ledford Decl.")), 28 (Def.'s Mem. of Law in Supp. of Mot. to

Dismiss ("Def.'s Mem.")), 29 (Notice to *Pro Se* Litigant Pursuant to Local Civil Rule 56.2).

Plaintiff opposed the Commissioner's motion, Dkt. No. 32 (Affirmation in Opp. to Mot. to Dismiss

("Oji Aff.")), and the Commissioner submitted a letter-brief in reply, Dkt. No. 33 (Def.'s Reply

Letter-Brief ("Def.'s Reply")).  Also before the Court are Plaintiff's "motions for judgment."  Dkt.

Nos. 13, 15, 31, 36, 39.

     For the reasons set forth below, I respectfully recommend that Plaintiff's motions be

**DENIED** and that the Commissioner's motion be **GRANTED**.

## II.  BACKGROUND

A.     **The Administrative Record**

     1.     Plaintiff's September 2007 Applications for Benefits

     On September 25, 2007, Plaintiff applied for supplemental security income benefits

("SSI").[1]  Infiesta Decl. ¶ 4; id., Ex. 1.  On October 2, 2007, the SSA denied Plaintiff's application

for SSI benefits on the ground that Plaintiff did not meet the citizenship, national, or alien status

requirement.  The SSA denial notified Plaintiff of his right to appeal by requesting reconsideration

within sixty-five days.[2]  Id. ¶ 4; id., Ex. 2.  The SSA has no record of Plaintiff having requested

reconsideration within the requisite sixty-five-day period.  Id. ¶ 4.

     On or about September 4, 2007, Plaintiff applied for disability insurance benefits ("DIB"),

alleging that he had been disabled since May 17, 2007.  Id. ¶ 5; id., Ex. 3.  The SSA denied this

───────────────

    [1] The SSA treated Plaintiff's application as though it had been filed on a "protective filing" date of August 28, 2007.  Id. ¶ 4.

    [2] A claimant has sixty days to appeal an SSA determination.  This sixty-day period begins to run on the day after the claimant receives the SSA notice.  The SSA presumes that the claimant will have received the notice five days after the date set forth on the notice.  See, e.g., Infiesta Decl., Ex. 2.  Hence, a claimant has sixty-five days after the notice date in which to seek an appeal.

application on March 6, 2008, on the ground that Plaintiff was not disabled, and notified Plaintiff of

his right to challenge this decision by requesting a hearing before an administrative law judge

("ALJ") within sixty-five days.  Id. ¶ 6; id., Ex. 4.  The SSA has no record indicating that Plaintiff

requested a hearing within the requisite sixty-five-day period.  Id. ¶ 6.  On June 12, 2009, however,

Plaintiff submitted a request for a hearing challenging the SSA's denial of his 2007 DIB

application.  Oji. Aff., Ex. A.  The Commissioner maintains that this request, submitted more than a

year after the SSA's initial determination was issued, was untimely.  Def.'s Reply at 1.

  2. Plaintiff's January 2009 Applications for Benefits

  On January 5, 2009, Plaintiff filed new applications for DIB, alleging a disability onset date

of May 16, 2007, and for SSI benefits.[3]  Infiesta Decl. ¶ 7; id., Exs. 5, 6.

  a. *DIB Determinations*

  The SSA approved Plaintiff's DIB claim on April 13, 2009 with a disability onset date of

March 7, 2008.  Id. ¶ 8; id., Ex. 7.  The April 13, 2009 notice informed Plaintiff that, pursuant to the

pertinent regulations, he became entitled to disability payments after a five-month waiting period,

which followed Plaintiff's onset date, had elapsed.  Id. ¶ 9.  Accordingly, Plaintiff's first month of

entitlement was September 2008.  Id.  Plaintiff was informed that he would begin receiving

monthly DIB payments in the amount of $836 beginning in May 2009.[4]  Id., Ex. 7.  The SSA

further notified Plaintiff that, while he also was entitled to a retroactive DIB award covering

September 2008 through March 2009, the SSA was temporarily withholding this award as it

continued to determine whether Plaintiff had received SSI benefits during this same period, in

---

[3] Plaintiff's SSI application was given a protective filing date of December 31, 2008.
Infiesta Decl. ¶ 7.

[4] Each month's payment included the award for the previous month.  For example, the
May 2009 payment reflected Plaintiff's April 2009 benefits.  Id.

which case Plaintiff's DIB award may have to be reduced. Id. The approval notice informed Plaintiff that he had the right to appeal by (1) seeking a hearing on the medical portions of the decision, and (2) requesting reconsideration of the non-medical portions of the decision. According to the notice, both requests were due within sixty-five days. The SSA has no record that Plaintiff requested a hearing or reconsideration within sixty-five days. Id. ¶ 10.

On May 25, 2009, the SSA informed Plaintiff that it originally had withheld $5714 from Plaintiff's retroactive DIB award during the pendency of Plaintiff's application for SSI benefits. Id. ¶ 13; id., Ex. 10. Following resolution of that application, the SSA had determined that it should have paid Plaintiff $2508 less in SSI payments than it already had awarded him because Plaintiff also was eligible to receive DIB during that time. The SSA notified Plaintiff that, in order to offset its overpayment of SSI benefits, it would deduct the $2508 from the DIB retroactive award that had been withheld. Id. Plaintiff was informed that he would receive the $3206 balance of his retroactive DIB award on or around June 2, 2009. Id. The SSA notice informed Plaintiff of his right to seek reconsideration of the decision to withhold this portion of his retroactive DIB award within sixty-five days. Id. On June 12, 2009, Plaintiff submitted a request for a hearing before an ALJ challenging SSA's May 25, 2009 decision to permanently withhold $2508 of Plaintiff's retroactive DIB award. Oji Aff., Ex. A. The Commissioner, who initially maintained that the SSA had no record that Plaintiff had appealed the May 25, 2009 decision, conceded on reply that the SSA was unaware that Plaintiff may have intended to appeal the May 25, 2009 decision and may have failed to act on Plaintiff's June 12, 2009 request for reconsideration of that decision. Def.'s Reply at 2. The Commissioner represents that the SSA currently is considering whether further review is warranted and that, pending this review, Plaintiff may have an opportunity to complete the administrative appeal process on this claim. Id. at 2 n.1.

On August 3, 2010, the SSA notified Plaintiff that he had become eligible for Medicare hospital and medical insurance.  Infiesta Decl. ¶ 23; id., Ex. 19.  The SSA informed Plaintiff that the premium for the medical insurance would be in the amount of $110.50 and would begin to be deducted from his monthly DIB checks as of September 2010, which would reflect the charge for August 2010.  Plaintiff was informed that he thereafter should expect to receive $726 in monthly DIB payments.  On September 17, 2010, Plaintiff requested that his Medicare medical insurance coverage be terminated.  Oji Aff., Ex. B.  On September 27, 2010, the SSA sent Plaintiff a letter confirming that Plaintiff had requested that it discontinue his medical insurance coverage under Medicare.  Infiesta Decl. ¶ 24; id., Ex. 20.  The SSA confirmed that Plaintiff still would receive the reduced benefits payment in October 2010, reflecting the September 2010 deduction, but thereafter would no longer be charged for the medical insurance premium and again would receive the full $836 beginning in November 2010.  Id.

More than six months later, on April 13, 2011, Plaintiff sent a letter to the SSA requesting reimbursement for the Medicare premium for which he was charged for the month of September 2010.  Id. ¶ 25; id., Ex. 21.  In Plaintiff's view, the SSA should have deducted the premium charge for only one month rather than two since Plaintiff had requested that his medical coverage be discontinued beginning in September 2010.  The SSA has been unable to locate any notice that it may have issued to Plaintiff in response to his April 13, 2011 correspondence.[5]  See Dkt. No. 37

---

[5] After initially reviewing the Commissioner's motion, the Court noted that the record submitted by the Commissioner contained no documentation of any response by the SSA to Plaintiff's April 13, 2011 correspondence.  The record also failed to include documentation of the SSA's alleged denial of Plaintiff's May 9, 2011 request for reconsideration or Plaintiff's August 26, 2011 written request to the SSA, both of which are discussed below.  The Court thereafter directed the Commissioner "to file a supplemental declaration attaching the underlying documentation for the determinations referenced above or setting forth an explanation for the Commissioner's inability to submit these documents."  Dkt. No. 34.  In this declaration, filed by the SSA on September 10, 2013, the SSA indicates that, "[d]espite a diligent search of SSA's

Wilder Decl. ¶¶ 5–6.  On May 9, 2011, Plaintiff submitted a request for reconsideration in which he again requested that the SSA reimburse him for the Medicare premium that had been deducted for September 2010.  Infiesta Decl. ¶ 28; Oji Aff., Ex. B.  The SSA represents that it denied Plaintiff's request and has no record of further appeal on this issue by Plaintiff, though it has been unable to locate any documentation of its denial.  See Infiesta Decl. ¶ 28; Wilder Decl. ¶¶ 7–8.  Plaintiff does not contend that he pursued the appeal process past the reconsideration step, although, as discussed below, he alleges in his complaint that he has been waiting for the SSA to respond to his request for reconsideration.

      b.    *SSI Determinations*

      On May 4, 2009, the SSA approved Plaintiff's SSI claim and informed Plaintiff that he was eligible to receive SSI benefits as of December 31, 2008 and entitled to a retroactive award in the amount of $2508.  Id. ¶ 11; id., Ex. 8.  Because Plaintiff had obtained interim SSI benefits from the Westchester County Department of Social Services ("WCDSS") while his application with the SSA was pending, however, a portion of Plaintiff's retroactive SSI award from the SSA would be withheld in order to reimburse the WCDSS for the benefits that it had paid to Plaintiff between December 2008 and April 2009.  Id., Ex. 8.  The SSA decision further informed Plaintiff that he was not eligible to receive SSI benefits from May 2009 forward because Plaintiff's DIB benefits, which he would begin receiving in May 2009, would raise his income over the maximum income level permitted for SSI eligibility.  Id.  Plaintiff was notified that he had the right to appeal within

---

computer records for Plaintiff," none of the requested documentation could be located.  Dkt. No. 37 (Decl. of Bryant Wilder ("Wilder Decl.")) ¶¶ 3–8, 11.  The SSA's search of Plaintiff's electronic records indicates that Plaintiff's paper file "was destroyed on November 14, 2012, pursuant to SSA's record retention policy," and its interviews of employees of Plaintiff's local field office also indicated that no paper file currently exists.  Id. ¶ 9–10.  The SSA's inability to locate these documents, however, ultimately is immaterial for the reasons set forth below.

sixty-five days by requesting reconsideration of the non-medical portions of the decision.  Id.  On

May 19, 2009, the SSA notified Plaintiff that $1851.52 was being deducted from his retroactive SSI

award in order to reimburse the WCDSS.  Id. ¶ 12; id., Ex. 9.  The SSA further informed Plaintiff

that he would be receiving $656.48, which represented the balance of the $2508 retroactive SSI

award.  Id.

      On May 27, 2009, Plaintiff submitted a request for reconsideration seeking review of the

SSA's May 4, 2009 decision denying him ongoing monthly SSI payments after April 2009.[6]

Infiesta Decl. ¶ 15; id., Ex. 11.  On August 25, 2009, the SSA denied Plaintiff's May 27, 2009

request for reconsideration on the ground that Plaintiff's income, including his monthly DIB

payments, exceeded the maximum income level for SSI eligibility.  Id. ¶ 16; id., Ex. 12.  The SSA

informed Plaintiff of his right to appeal this decision by requesting a hearing before an ALJ within

sixty-five days, or by October 29, 2009.  Id., Ex. 12.  The SSA has no record that Plaintiff requested

a hearing within the requisite sixty-five-day period.  Id. ¶ 17.

      Beginning on November 2, 2009, however, Plaintiff sent a series of letters to the SSA.

Infiesta Decl. ¶ 18.  On November 2, 2009, Plaintiff informed the SSA that, because of his

"continued financial hardship," he recently had to borrow $500.  Id., Ex. 13.  He explained that the

monthly DIB payments that he received, as well as the retroactive SSI award that he had received,

were "insufficient" to cover his expenses.  Id.  On November 20, 2009, Plaintiff sent another letter

to the SSA informing the agency that his DIB payments were insufficient and that he again had

borrowed money to cover his living expenses.  Id.  Plaintiff sent another letter to the SSA on

December 1, 2009 informing the agency that, once again, he had borrowed money to cover his

expenses because his DIB payments were insufficient.  Id.

─────────────────

     [6] This request was received by the SSA on June 16, 2009.  Infiesta Decl. ¶ 15.

On December 7, 2009, the SSA sent Plaintiff a notice stating:  "IF YOU DISAGREE WITH OUT [*sic*] LAST DECISION YOU SHOULD COME TO THE OFFICE AND FILE AN APPEAL."  Id. ¶ 19; id., Ex. 14.  This notice instructed Plaintiff to go to his local SSA office to file an appeal by December 15, 2009.  Id., Ex. 14.  The SSA has no record indicating that Plaintiff went to his local SSA office by December 15, 2009.  Id. ¶ 20.  However, on December 21, 2009, Plaintiff wrote to the SSA once again regarding the insufficiency of his DIB payments.  Id. ¶ 21; id., Ex. 15.  This letter was followed by another letter, dated January 1, 2010, in which Plaintiff described his "continued financial difficulties" and noted that his financial problems had "been worsened because [the SSA had] not yet approved monthly Supplemental Security Income payments."  Id.  On January 21, 2010, Plaintiff sent another letter to the SSA informing the agency that his DIB payments continued to be insufficient, that he once again had borrowed money to cover his expenses, and that he would "like [the SSA] to approve monthly Supplemental Security Income payments . . . as soon as possible."  Id.  Plaintiff sent another letter to the SSA on February 1, 2010 indicating that he once more had resorted to borrowing money because his DIB payments were insufficient and that he "need[ed] [his] request for monthly Supplemental Security Income payments approved as soon as possible."  Id.  On March 29, 2010, Plaintiff sent a letter to the SSA stating that, because of his ongoing financial difficulties, he recently had borrowed money yet again.  Id.  On March 31, 2010, Plaintiff provided the SSA with information regarding his current medical treatment, including medications.  Id., Ex. 16.  On April 7, 2010, Plaintiff sent a letter to the SSA confirming his new bank account information, which he apparently had provided previously over the telephone.  Id., Ex. 17.  Plaintiff also requested that the SSA "please approve [his] request for Supplemental Security Income (SSI)."  Id.

On July 13, 2010, Plaintiff provided the SSA with additional information regarding his

ongoing financial difficulties and his need for SSI payments.  Id. ¶ 22; id., Ex. 18.  Plaintiff also

inquired about the status of a request for reconsideration of the SSA's decision regarding ongoing

SSI payments that he allegedly had submitted on June 21, 2010.  Id.  The SSA has no record of a

request for reconsideration or any other correspondence from Plaintiff dated June 21, 2010, and

Plaintiff also has not produced any such documentation.  Id. ¶ 22.

    Nine months later, on April 14, 2011, Plaintiff submitted a second request for

reconsideration of the SSA's May 4, 2009 decision denying him ongoing SSI benefits.  Id. ¶ 26; id.,

Ex. 22.  As discussed above, Plaintiff had requested reconsideration of this decision previously on

May 27, 2009, and this request was denied on August 25, 2009, at which time the SSA had advised

Plaintiff of his right to proceed to the next step of the administrative appeal process—the ALJ

hearing—within sixty-five days.  Although the SSA already had denied Plaintiff's prior request for

reconsideration, and even though Plaintiff's April 14, 2011 request was untimely, the SSA

nevertheless reviewed Plaintiff's request and, on July 26, 2011, denied it on the ground that

Plaintiff was not eligible for SSI because his monthly income of $836 in DIB exceeded the

maximum allowable income level.  The SSA advised Plaintiff of his right to request a hearing

before an ALJ within sixty-five days.  Id. ¶ 27; id., Ex. 23.  Following this initial response, which

the SSA subsequently claimed was issued in error given Plaintiff's failure to timely pursue the

appeal process following its August 25, 2009 denial, the SSA advised Plaintiff on September 14,

2011 that he had no pending application for SSI benefits and would need to file a new application

for SSI benefits before any decision on his request for such benefits could be rendered.[7]  Id. ¶¶ 27,

---

    [7] The SSA's September 14, 2011 notice references an August 26, 2011 "written request"
by Plaintiff.  As noted above, the SSA has been unable to locate any record of this request, see
Wilder Decl. ¶¶ 3–4, though the SSA represents that it has no record of Plaintiff having
requested a hearing following its issuance of the July 26, 2011 notice.  Infiesta Decl. ¶ 27.

29; id., Ex. 24.  The SSA has no record that Plaintiff pursued his claim for SSI benefits following its issuance of the September 14, 2011 notice.

After Plaintiff commenced this action in September 2012,[8] the SSA sent Plaintiff a notice on January 16, 2013 informing him that it "WOULD LIKE TO REOPEN THE RECONSIDERATION (APPEAL) YOU FILED ON 07/26/2011[9] AND TREAT IT LIKE A REQUEST FOR A HEARING."  Id. ¶ 31; id., Ex. 25.  The SSA stated that, in order to move forward with the appeal, Plaintiff would have to explain why he did not submit his appeal until nearly two years after his initial request for reconsideration was denied by the SSA on August 25, 2009.  On or about February 7, 2013, Plaintiff visited his local SSA office and submitted a signed statement in which he explained that, because the SSA allegedly had ignored several requests for reconsideration that he had submitted and because he allegedly had received inconsistent information from SSA employees regarding the maximum income requirement for SSI eligibility, he "did not ask for an appeal for SSI today."  Id. ¶ 33; id., Ex. 26.  On February 27, 2013, personnel from the local SSA office spoke with Plaintiff by telephone in an attempt to clarify whether Plaintiff wished to reopen his April 14, 2011 appeal but did not receive a clear indication from Plaintiff.  Id. ¶ 35.  The SSA has taken no further action on Plaintiff's request for ongoing SSI payments.  Id. ¶ 36.

> 3.    Plaintiff's Complaints of Discrimination to the SSA's Office of General Counsel

On June 1, 2009, Plaintiff submitted a letter to the SSA's Office of General Counsel complaining about "discrimination" that he had experienced in the local SSA office and when he

---

[8] The docket indicates that the Commissioner was served on December 3, 2012.  Dkt. No. 10.

[9] The Commissioner represents that this notice was intended to refer to Plaintiff's April 14, 2011 request for reconsideration, not to the SSA's July 26, 2011 denial of that request.  Id. ¶ 32.

called the national SSA hotline.[10]  Conte Decl. ¶ 2; id., Ex. A.  Plaintiff claimed that he was

discriminated against between September 2007 and February 2008 and again beginning in January

2009.  Plaintiff claimed that he had been discriminated against based on his race, national origin,

sex, religion, marital status, and medical disability and that he had been retaliated against.  Among

other allegations, Plaintiff claimed that various SSA employees had lied to him, asked him unfair

questions, and tried to seduce him and lure him into prostitution.  Plaintiff's proposed "[m]ethods of

resolving this issue with the SSA" included (1) an increase in his monthly DIB payments, as

well as payment for the full amount of his retroactive DIB award; (2) approval of his request for

ongoing SSI benefits, as well as payment for the full amount of his retroactive SSI award; (3) an

award of $5 million in "overall compensation;" and (4) disciplinary action to be taken against the

offending employees.  Id., Ex. A at 5 (unpaginated).

On August 18, 2009, the SSA's regional chief counsel sent Plaintiff a letter communicating

his conclusion that the SSA had committed no acts of discrimination.  Id. ¶ 3; id., Ex. B.  This letter

advised Plaintiff of his right to request reconsideration of this initial determination within sixty

days.  On September 4, 2009, Plaintiff requested reconsideration of the regional chief counsel's

determination.  Id. ¶ 4; id., Ex. C.  In this letter, Plaintiff alleged additional instances of treatment

by SSA employees that, in Plaintiff's view, were discriminatory.  The SSA's Office of General

Counsel notified Plaintiff on January 25, 2010 that his request for reconsideration was denied.  Id. ¶

5; id., Ex. D.  The deputy general counsel informed Plaintiff regarding the various actions that the

SSA had taken in an attempt to address Plaintiff's new concerns and also reviewed the opportunities

that Plaintiff had been afforded to appeal the SSA's various determinations concerning his

applications for benefits.

_____

[10] This letter was received by the SSA on June 15, 2009.  Conte Decl. ¶ 2.

**B.**     <u>The Allegations in the Complaint</u>

Plaintiff commenced this action on or about September 27, 2012. Dkt. No. 2 (Compl.). In his complaint, Plaintiff alleges that the events giving rise to his claims occurred between 2007 and 2012. Compl. at 3 (unpaginated). Plaintiff claims that his initial 2007 DIB application was improperly denied because his medical condition was no better at the time of his 2007 application than it was when the SSA approved his subsequent 2009 DIB application.[11] Id. at 5. Plaintiff, therefore, challenges the SSA's denial of his 2007 application, as well as the onset date determination that it made in 2009, and claims that he should have received DIB beginning in 2007. Id. at 5–6. Plaintiff claims that, although he repeatedly informed the SSA about his financial difficulties, the SSA "did nothing to accommodate [his] needs" and improperly withheld DIB payments between May 2007 and March 2009. Id. at 6. In Plaintiff's view, the SSA's decision denying him DIB for this period was "unjust, inconsiderate and criminal." Id. Plaintiff alleges that, on June 12, 2009, he requested a hearing before an ALJ regarding an "increase" in his DIB payments. Id. at 7.

With regard to his 2009 DIB application, Plaintiff alleges that the SSA wrongfully withheld his DIB payments through March 2009 and thereby arguably challenges the SSA's decision to withhold a portion of his retroactive DIB award for September 2008 through March 2009 in order to offset the SSI benefits that he also received during that period. Id. at 6. This claim also arguably was covered by Plaintiff's request to "increase" his DIB award. Id. at 7. Plaintiff also challenges the SSA's failure to reimburse him for the $110 Medicare premium that was deducted from his September 2010 benefits check after he had informed the SSA that he wished to decline the

---

[11] The complaint states that he reapplied in January 2008, but the record shows that this application actually was submitted in January 2009.

insurance coverage.  Id. at 8–9, 10–11.  Plaintiff further claims that the SSA's initial notice

regarding the Medicare premium was misleading and led him to believe that he would be receiving

an additional $110 in his benefits checks rather than a reduction of $110.  Id. at 8.  Plaintiff alleges

that he has written to the SSA "at least 5 times" to request this reimbursement but that the SSA has

"ignored" these requests.  Id. at 10.  Plaintiff has not provided dates for these alleged requests.[12]

With regard to his 2009 SSI application, Plaintiff challenges the SSA's decision to withhold

$1851.52 of his retroactive SSI award in order to reimburse the WCDSS.  Id. at 6.  Plaintiff also

challenges the SSA's decision not to award him ongoing monthly benefits.  Id. at 7.  Plaintiff claims

that the SSA "lied" when denying his application on the ground that his income was too high to

qualify for ongoing SSI payments and that this decision was an "illegal attempt[] to lure [Plaintiff]

into prostitution."  Id. at 6.  Plaintiff alleges that he submitted a request for reconsideration of this

decision on May 27, 2009.  Id. at 7.  While Plaintiff claims that he received no response from the

SSA regarding this request, id., as discussed above, the administrative record includes an August

25, 2009 decision by the SSA denying Plaintiff's reconsideration request and advising Plaintiff of

his right to request a hearing before an ALJ.[13]  Plaintiff claims that he submitted another request for

reconsideration of this decision in February 2010 but that the SSA has no record of this request.  Id.

The administrative record, however, does include a February 1, 2010 letter from Plaintiff, as

discussed above, in which Plaintiff asked that his application for ongoing monthly SSI benefits be

approved.  Plaintiff also alleges that he submitted a request for reconsideration of this decision on

---

[12] The Court notes that Plaintiff did, however, attach his April 13, 2011 request for reimbursement and May 9, 2011 request for reconsideration as exhibits to his affirmation in opposition to the Commissioner's motion.  See Oji Aff., Ex. B.

[13] The Court notes that the August 25, 2009 notice was mailed to Plaintiff at the address that he provided on his May 27, 2009 request for reconsideration.  Compare Infiesta Decl., Ex. 11 with id., Ex. 12.

13

June 21, 2010 but that this request was not processed by the SSA until September 17, 2010.  The

Commissioner represents that the SSA has no record of a June 21, 2010 request by Plaintiff.

Infiesta Decl. ¶ 22.

Plaintiff alleges that, since June 2011, he has been attempting to get a response from the

SSA with regard to his requests for reconsideration of (1) the SSA's denial of ongoing monthly SSI

benefits, and (2) the SSA's failure to reimburse him for the Medicare premium deduction.  Compl.

at 10–11.  Plaintiff alleges specifically that he sent requests (1) on April 14, 2011, which, according

to the administrative record was received by the SSA and responded to on July 26, 2011, and (2) on

August 26, 2011, which is not included in the administrative record but is referenced in the SSA's

September 14, 2011 notice to Plaintiff informing him that it was necessary to file a new application

for SSI benefits.  Id. at 11.  While Plaintiff alleges that he had "not gotten a just response" to either

of these requests, id. at 11, the record demonstrates that the responsive July 26, 2011 and September

14, 2011 notices both were mailed to Plaintiff at the address that Plaintiff provided on his April 14,

2011 request for reconsideration.[14]  Compare Infiesta Decl., Ex. 22 with id., Exs. 23, 24.

Plaintiff also raises several general allegations of inappropriate treatment by SSA

employees.  Plaintiff claims that SSA employees use false "names to promote injustice, corruption

and prostitution" and to "communicate discrimination on the bases of religion, marital status,

gender and sex."  Compl. at 6.  According to Plaintiff, SSA employees also have mistreated him by

failing to return his telephone calls and by "giv[ing] little hints as to how prostitution can falsely

make life easier" in an attempt to "blackmail, threaten and discriminate" against him.  Id. at 6–7.

---

[14] The Court notes that the address that Plaintiff provided on his April 14, 2011 request
for reconsideration, and used by the SSA on its responsive notices, is the same address that is
listed on Plaintiff's complaint in this action.  Compare Compl. at 1 with Infiesta Decl., Exs. 22,
23, 24.

Plaintiff further alleges that, when he visited the local SSA field office in 2009 to submit his second set of applications, an SSA worker was "unjust" and "very rude" and asked him questions such as "'were you born in America?' with a body language that show[ed] she was discriminating against [Plaintiff] on the basis of national origin." Id. at 5. Plaintiff claims that this worker's inquiry as to whether Plaintiff had a bank account "sound[ed] racist" and was "meant to try to classify [Plaintiff] as a street black male who is not expected to have a bank account." Id. at 6. Plaintiff also claims that, when he was completing his benefits applications, SSA workers made "serious and false statements" by telling him that there was "an upper limit on how much '[DIB] benefit' [Plaintiff could] get and [also] be qualified for 'SSI benefits.'" Id. at 7. Plaintiff claims that SSA employees have "changed" the maximum income figure and told him that the figure "depend[ed] on where the recipient lives." Id. In Plaintiff's view, one particular SSA worker had "appear[ed] to be a racist" because she had "frowned her face" and "was unjust, impolite and rude" and mishandled his Medicare premium issue. Id. Plaintiff also alleges that his "interactions" with another SSA employee between September 2009 and April 2010 were "fruitless and very frustrating" because she "discriminated against [him] on the bases of gender, marital status and sex;" was "very rude," ignored his telephone calls; and "made indirect sexual advances," including by asking Plaintiff for his telephone number in "seductive ways." Id. at 7–8. Plaintiff further claims that SSA employees have "tr[ied] to cause problems" when he has gone into the local field office including by giving him conflicting information regarding photocopying and stamping documents. Id. at 8. Plaintiff also claims that SSA workers have "use[d] unnecessary methods to try to bring about confusion and commit fraud," including by mixing up his claim numbers. Id. at 9. Plaintiff alleges that he provided a change of address to the SSA in October 2010, but that this change of address request was "ignored." Id. at 10. Plaintiff also alleges that he was harassed by a security guard at the local

field office in June 2012. Id. at 11. The complaint expresses Plaintiff's frustration with having to wait for months before receiving the Office of General Counsel's initial response to his discrimination complaint, as well as its decision on his request for reconsideration. Id. at 7–8. Plaintiff alleges that the Office of General Counsel "did not truthfully and justly address [his] complaints." Id. at 8.

Plaintiff's claimed injuries are anxiety, depression, emotional distress, and financial stress resulting from the SSA's discrimination against him and "unjust[] reduc[tion] [of his] income." Id. at 3. Plaintiff alleges that the SSA discriminated against him in "many ways," including by "unjustly den[ying]" him income "for years." Id. at 4. He claims that "[s]ome of the major damages" caused by the SSA were "lack of sufficient payments." Id. at 8. Plaintiff sets forth detailed allegations regarding the fact that he was unable to afford his apartment because the SSA did not "give [him] enough money" and that, after being evicted, he was forced to stay for several months in 2010 at the YMCA where he was subjected to "difficult conditions." Id. at 9–10. In Plaintiff's view, his problems "could have been avoided if the 'SSA' had approved [his] requests and [had] not discriminate[d] against [him]." Id. at 9. Plaintiff demands "$975 septillion" as compensation for his alleged injuries and in punitive damages. Id. at 4; see also id. at 11.

Construing Plaintiff's *pro se* complaint liberally, as the Court is required to do, see e.g., Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001), the Court has discerned that Plaintiff challenges the following benefits determinations reached by the SSA:

(1)     denial of Plaintiff's 2007 DIB application;

(2)     permanent withholding of a portion of Plaintiff's retroactive DIB award in order to offset his SSI award;

(3)     denial of Plaintiff's request for reimbursement of the Medicare premium deduction taken from his September 2010 DIB payment;

16

(4)     permanent withholding of a portion of Plaintiff's retroactive SSI award in order to reimburse the WCDSS; and

(5)     denial of Plaintiff's request for ongoing SSI monthly benefits after April 2009.

### III.  DISCUSSION

#### A.     Plaintiff's Motions

On April 5, 2013, Plaintiff filed a "motion for judgment" based on the Commissioner's failure to file her answer or move to dismiss by April 2, 2013, the extension date that previously had been consented to by Plaintiff and approved by the Court.  Dkt. No. 13.  On April 1, 2013, however, the Commissioner had requested a further extension of her deadline to answer to May 2, 2013, and this request had been approved by the Court on that same day.  Dkt. No. 12.

On April 30, 2013, the Commissioner requested, without Plaintiff's consent, an additional two weeks to answer or move with respect to the complaint.  The Court granted this request on April 30, 2013 and extended the deadline to May 16, 2013.  Dkt. No. 14.  On May 7, 2013, Plaintiff objected to any further request by the Commissioner for an extension and again requested that the Court enter judgment in his favor.  Dkt. No. 15.  On or about May 16, 2013, Plaintiff filed another "motion for a judgment" based on the Commissioner's apparently having sought Plaintiff's consent to yet another extension request.  Dkt. No. 31.  In this motion, Plaintiff again objected to any further extensions of the Commissioner's time to answer or move and asked the Court to render a judgment against the Commissioner.  The Commissioner filed her motion to dismiss on May 16, 2013, in accordance with the extended schedule that had been approved by the Court.[15]

Plaintiff filed another "motion for a judgment" on August 21, 2013.  Dkt. No. 36.  This

---

[15] The Court notes that, due to a filing error, the Commissioner re-filed her motion papers on May 22, 2013 after initially filing them on May 16.

17

motion is premised on Plaintiff's objection to the SSA's request for an extension of the deadline for filing the supplemental declaration directed by the Court and on the SSA's failure to file that declaration on or before the original August 20, 2013 deadline.  The Court had received and approved the Commissioner's extension request on August 20, 2013.  Dkt. No. 35.  On September 9, 2013, Plaintiff filed yet another "motion for a judgment" in which he objects to the SSA's having received an extension for filing its supplemental declaration and demands judgment based on the SSA's failure to timely respond.  Dkt. No. 39.

Because this Court granted each of the Commissioner's extension requests, and because the Commissioner filed her motion and supplemental declaration within the extended schedules that were approved by the Court, I respectfully recommend that Plaintiff's motions be denied.

## B.   **Defendant's Motion**

The Commissioner moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.  In the alternative, the Commissioner moves for summary judgment.  Dkt. Nos. 20, 24–30.

The Commissioner argues that Plaintiff's benefits claims should be dismissed for lack of subject matter jurisdiction because the SSA's determinations on Plaintiff's applications for DIB and SSI benefits are not subject to federal district court review given Plaintiff's failure to administratively exhaust those claims.  See Def.'s Mem. at 13–17.  The Commissioner further argues that Plaintiff's purported civil rights claim should be dismissed for failure to state a claim because (1) if construed as a general constitutional claim, the Supreme Court has held that the Social Security Act precludes claims for money damages based on denials of benefits, and (2) if construed as a claim under the Federal Tort Claims Act ("FTCA"), Plaintiff has improperly named the SSA as the defendant, rather than the individual federal employees against whom he seeks to

raise claims, and because Plaintiff did not present any tort claim to the agency within two years of the alleged incidents. See id. at 17–20. Finally, the Commissioner argues that, even if there was a cognizable legal basis for Plaintiff's purported civil rights claim, Plaintiff's factual allegations are fanciful and delusional. See id. at 20.

In opposition, Plaintiff argues that the SSA "told a lie" about the Medicare premium and "withdrew money from [his] account two consecutive times." Oji Aff. at 1 (unpaginated). Plaintiff asserts that he informed the SSA on an ongoing basis about the financial "hardship" that he experienced as a result of his low income. Id. He claims that the SSA "is accountable for [his] sufferings and should be made to pay" for them. Id. Plaintiff contends that the SSA does "not handle [his] matters justly or with respect" but rather that its employees lie and engage in careless behavior. Id.

With regard to the Commissioner's argument that Plaintiff failed to administratively exhaust his claims, Plaintiff argues that he sent a request for a hearing before an ALJ to the SSA on June 12, 2009, which is attached as an exhibit to his affirmation, in which he requested review of (1) the SSA's denial of his 2007 DIB application, and (2) the SSA's withholding of his retroactive DIB award.[16] Id. at 2; id., Ex. A. Plaintiff argues that the SSA did not respond to this request, despite his repeated communications regarding his financial distress and need for ongoing SSI payments. Id. at 2. Plaintiff contends that he "ha[s] been asking for a hearing for years" concerning his "entitlements" and therefore has "exhausted what they offered [him] except they discriminated against [him]." Id. Plaintiff also represents that the SSA informed him that it would be "pointless"

_____

[16] Plaintiff also attached to his affirmation in opposition the request for reconsideration that he allegedly submitted to the SSA on May 9, 2011 seeking reimbursement of the Medicare premium deduction for September 2010. Oji Aff., Ex. B. While the Commissioner claims that this request was denied and Plaintiff sought no further appeal, as discussed above, the SSA has been unable to locate documentation of this denial. Infiesta Decl. ¶ 28; Wilder Decl. ¶ 8.

to pursue an appeal for ongoing SSI payments given his monthly DIB income and that the SSA

"made" him sign the February 7, 2013 statement in which he indicated that he did not wish to

pursue an appeal.  Id.  Plaintiff claims that the SSA has "ignored [his] requests for a hearing in the

past and have told [him that he] would be wasting [his] time if [he] applied for SSI benefits early

this year."  Id.  The Court construes these arguments as claiming that Plaintiff's attempts to pursue

the administrative appeal process were futile and thus that Plaintiff is entitled to an exception to the

exhaustion requirement.

On reply, the Commissioner argues that "Plaintiff's affirmation in opposition . . . fails to

assert that he received a final decision of the Commissioner that is subject to Court review and

therefore the complaint should be dismissed."  Def.'s Reply at 1.  With regard to the June 12, 2009

request for hearing submitted by Plaintiff in opposition, the Commissioner maintains that, to the

extent that this request challenged the SSA's denial of Plaintiff's 2007 DIB application, it was

untimely and the initial determination on this application therefore remained binding.  Id.  To the

extent that this request also challenged the SSA's withholding of a portion of Plaintiff's retroactive

DIB award, the Commissioner represents that she was unaware that Plaintiff may have intended to

appeal the May 25, 2009 decision on this issue and that the SSA currently is reviewing whether it

may have failed to act on a timely request and whether further administrative review is warranted.

Id. at 2, 2 n.1.

      1.    *Administrative Exhaustion of Plaintiff's Claims for Benefits*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v.

United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  District courts

"may refer to evidence outside the pleadings," such as the evidence submitted by the Commissioner

with the instant motion, when "resolving a motion to dismiss for lack of subject matter jurisdiction." Id.; accord Katsoulakis v. Astrue, No. 10-CV-0081 (JFB), 2011 WL 3877080, at *1 (E.D.N.Y. Aug. 31, 2011) ("[T]he court may consider evidence beyond the pleadings to resolve disputed issues of fact regarding its jurisdiction.") (citing Flores v. S. Peru Copper Corp., 414 F.3d 233, 255 n.30 (2d Cir. 2003)).[17] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113. As noted above, "[w]hen considering motions to dismiss the claims of plaintiffs proceeding pro se, courts in [the Second] Circuit are instructed to construe the pleadings liberally." Weinstein, 261 F.3d at 132.

The Social Security Act authorizes claimants to seek federal district court review of "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party." 42 U.S.C. § 405(g). The Supreme Court has noted that the Act "clearly limits judicial review to a particular type of agency action, a 'final decision . . . made after a hearing.'" Califano v. Sanders, 430 U.S. 99, 108 (1977) (quoting 42 U.S.C. § 205(b)). In order to exhaust the administrative review process and obtain a final decision that may be subject to federal district court review, a claimant must proceed through the following four steps: (1) initial determination, (2) reconsideration, (3) hearing before an ALJ, and (4) review by the Appeals Council. See 20 C.F.R. § 404.900(a); accord Gist v. Comm'r of Soc. Sec., No. 5:07-CV-1246 (TJM), 2008 WL 4239593, at *3 (N.D.N.Y. Sept. 11, 2008) ("When a plaintiff disputes a determination of the SSA regarding his economic eligibility for payments or the underpayment or overpayment of benefits, he must pursue three levels of administrative procedures in order to fully exhaust his administrative remedies.")

There is no dispute that Plaintiff failed to obtain a "final decision" from the Commissioner,

---

[17] Copies of unreported cases cited herein will be mailed to Plaintiff. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

21

within the meaning of the Act, on any of the benefits determinations at issue in this case.  While

Plaintiff pursued some of the agency's decisions past the initial determination stage, as discussed

below, Plaintiff does not allege, and the record does not reflect, that Plaintiff presented any of his

claims to an ALJ at a hearing or to the Appeals Council, as he was required to do before seeking

federal district court review.

First, with regard to the SSA's March 6, 2008 initial decision to deny Plaintiff's 2007 DIB

application, Plaintiff claims that he requested an ALJ hearing on June 12, 2009.  While the SSA

apparently did not consider this request at that time, Plaintiff's attempt to appeal its initial

determination more than a year later clearly was made outside the sixty-five-day limit of which

Plaintiff was informed on March 6, 2008.  Plaintiff does not suggest that he otherwise attempted to

pursue administrative review of this claim, and it is apparent that Plaintiff failed to timely exhaust

this claim.

Second, with respect to the SSA's May 25, 2009 determination to permanently withhold a

portion of his retroactive DIB award in order to offset the SSI benefits that he received during the

same period of time, Plaintiff alleges that, on June 12, 2009, he timely requested an ALJ hearing.

While the SSA acknowledges that it may have failed to act on that apparently timely request, the

Commissioner represents that she was not aware that Plaintiff intended to appeal the May 25, 2009

decision regarding his retroactive DIB award and that the SSA currently is considering whether

further administrative review may be warranted.  There is no dispute, however, that Plaintiff has not

yet obtained a final decision on this issue, and, therefore, this claim also is unexhausted.

Third, with regard to the SSA's denial of Plaintiff's request for reimbursement of the

Medicare premium deduction, Plaintiff does not allege that he proceeded through all four steps of

the administrative process and thereby obtained a final decision.  The initial deduction of this

22

amount occurred in October 2010, which is when Plaintiff's September 2010 benefits check was

issued.  The first indication in the record that Plaintiff requested reimbursement of this deduction is

Plaintiff's April 13, 2011 letter requesting such reimbursement, and Plaintiff does not allege that he

requested reimbursement any earlier.  It is not clear whether the SSA responded to this letter, but

Plaintiff alleges—and the agency represents—that, on May 9, 2011, Plaintiff submitted a request

for reconsideration of the SSA's decision not to reimburse him.  While Plaintiff generally alleges

that his requests regarding the Medicare reimbursement were "ignored," Compl. at 10, the

Commissioner represents that the SSA denied Plaintiff's May 9, 2011 request, Infiesta Decl. ¶ 28.

It is undisputed that Plaintiff did not actually proceed to the ALJ hearing or Appeals Council stages

of the administrative review process and therefore did not obtain a final decision on this claim.

Fourth, while in his complaint Plaintiff challenges the SSA's May 19, 2009 decision to

permanently withhold a portion of his retroactive SSI award in order to reimburse the WCDSS,

there is no indication in Plaintiff's pleadings, or in the administrative record before the Court, that

Plaintiff sought to administratively appeal this determination.  Accordingly, it is undisputed that

Plaintiff did not obtain a final decision on this issue.

Fifth, with respect to the SSA's May 4, 2009 determination that Plaintiff was not eligible for

ongoing monthly SSI payments after April 2009 because his income—inclusive of his DIB

payments—exceeded the allowable limit, Plaintiff submitted a timely request for reconsideration on

May 27, 2009.  On August 25, 2009, the SSA denied Plaintiff's request and advised Plaintiff of his

right to continue his administrative appeal by requesting a hearing before an ALJ within sixty-five

days.  Plaintiff did not request a hearing within that period, but, in November and December 2009,

he sent letters to the SSA complaining about his financial difficulties and expressing his need for

additional benefits.  On December 7, 2009, the SSA advised Plaintiff that, if he disagreed with the

agency's last decision, then he needed to file an appeal.  Plaintiff did not file a formal appeal, but, on December 21, 2009, he sent another letter to the SSA concerning the insufficiency of his benefits.  Plaintiff thereafter sent several letters between January and July 2010 detailing his financial difficulties and, in some letters, requesting that the SSA reconsider its decision to deny him ongoing monthly SSI payments.

Some time later, on April 14, 2011, Plaintiff submitted a second request for reconsideration of the SSA's May 4, 2009 initial determination.  The Court notes that, because the SSA already had denied Plaintiff's first request for reconsideration on August 25, 2009, Plaintiff had been obligated to pursue the next step of the administrative appeal process—a hearing before an ALJ—within sixty-five days thereafter.  Nevertheless, on July 26, 2011, the SSA issued a notice denying Plaintiff's April 14, 2011 request, again on the ground that his income exceeded the allowable limit, and advising Plaintiff of his right to seek a hearing before an ALJ.  The SSA, however, subsequently took the position that its July 26, 2011 decision had been issued in error because Plaintiff no longer had any pending SSI application since he had failed to timely request an ALJ hearing within sixty-five days of the August 25, 2009 denial and that denial, therefore, had become final and binding.  On September 14, 2011, the SSA advised Plaintiff that, if he wished to seek further agency consideration of his eligibility for ongoing SSI benefits, then he would have to file a new application.[18]  The record indicates that Plaintiff took no action after receiving these notices, and Plaintiff does not allege otherwise.

After Plaintiff commenced this action in September 2012, the SSA issued a notice to

---

[18] As discussed above, the SSA's September 14, 2011 notice references an August 26, 2011 written request from Plaintiff, although the SSA has been unable to locate documentation of this request.  The SSA's failure to locate this request is immaterial, however, given that Plaintiff did not pursue the claim further after receiving the SSA's responsive notice.

Plaintiff on January 16, 2013 expressing its willingness to reopen the request for reconsideration

that he had filed in April 2011, to construe it as a request for a hearing before an ALJ, and to give

Plaintiff an opportunity to establish good cause for his failure to timely request an ALJ hearing after

receiving the SSA's August 25, 2009 denial.  Plaintiff went to his local SSA field office on

February 7, 2013 where he signed a statement indicating that he did not wish to pursue an appeal

given his understanding that such an appeal would be futile.  There is no question that Plaintiff

failed to obtain a final decision on this claim given that he did not proceed to the ALJ hearing or

Appeals Council stages of the review process.  The Commissioner represents that the SSA was

willing to reopen Plaintiff's 2009 application and give him the opportunity to establish good cause

and administratively exhaust this claim.

While Plaintiff has not obtained a final decision on any of the claims that he has raised

before this Court, a plaintiff's failure to exhaust may be excused under certain circumstances.

Specifically, a plaintiff's failure to exhaust a claim may not bar federal district court review "if (1)

the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring

exhaustion would result in irreparable harm."  Kuforiji v. Comm'r of Soc. Sec. Admin., No. 10-CV-

1874 (ENV), 2012 WL 3656480, at *1 (E.D.N.Y. Aug. 24, 2012) (quoting Escalera v. Comm'r of

Soc. Sec., 457 F. App'x 4, 6 (2d Cir. 2011)) (internal quotation marks omitted).  Additionally,

"[s]ome courts have consented to review a claim for benefits where no hearing was held . . . under

circumstances suggesting that plaintiff has raised a viable constitutional issue," such as a claim that

the plaintiff received no notice of an ALJ hearing or that the agency failed to follow its own

regulations.  Katsoulakis, 2011 WL 3877080, at *4.

As discussed above, Plaintiff's arguments may be liberally construed as alleging futility.  A

plaintiff may establish futility by "demonstrating that SSA was unwilling to hear a timely appeal or

25

that, for some other reason, filing a timely, agency appeal would have been futile." <u>Kuforiji</u>, 2012

WL 3656480, at *1.  On the record presently before the Court, the Court is unable to conclude that

timely administrative appeal by Plaintiff would have been futile.  Plaintiff was notified of his right

to pursue the administrative appeal process on each initial determination made by the SSA, and

there is no indication that the SSA would not have permitted Plaintiff to proceed with the

administrative appeal process had he submitted timely requests.

First, Plaintiff made no attempt to administratively appeal the SSA's decision to withhold a

portion of his retroactive SSI award.  Second, Plaintiff also made no attempt to administratively

appeal the SSA's denial of his 2007 DIB application until June 12, 2009, more than a year after that

application was initially denied.  There is no basis for the Court to conclude that timely attempts by

Plaintiff to appeal these claims would have been futile.

Third, there is no indication in the record that Plaintiff made any attempt to request

reimbursement of the $110 Medicare premium deduction—and thereby challenge the SSA's

September 27, 2010 notice informing Plaintiff about that deduction—until April 13, 2011.  The

SSA represents that it denied Plaintiff's May 9, 2011 request for reconsideration of its decision not

to reimburse and that Plaintiff took no further action with regard to this claim.  Because Plaintiff

alleges that his Medicare-related requests were ignored and because the SSA has been unable to

locate documentation of any notices that it may have sent in response to Plaintiff's April 13 or May

9 correspondence, there arguably is an issue of fact with regard to whether Plaintiff received any

such response.  There is no dispute, however, that, after receiving the SSA's initial September 27,

2010 notice, Plaintiff failed to request reimbursement for the $110 Medicare deduction until more

than six months had elapsed.  This record does not suggest that a more prompt attempt by Plaintiff

to pursue administrative consideration of this claim would have been futile.

Moreover, while the Commissioner has not raised this argument, it is unclear to the Court that the SSA's initial notice regarding the Medicare premium deduction even constitutes an "initial determination," within the meaning of the pertinent regulations, for which Plaintiff would be entitled to further administrative review or, ultimately, federal district court review. An "initial determination" is a "determination that [the SSA] make[s] about [the claimant's] entitlement or . . . continuing entitlement to benefits or about any other matter, as discussed in § 404.902, that gives [the claimant] a right to further review." 20 C.F.R. § 404.900(a)(1). Section 404.902 sets forth a list of administrative actions that constitute "initial determinations," including determinations regarding the claimant's entitlement to benefits, amount of benefits, "deduction[s] from . . . benefits on account of work," termination of benefits, "[p]enalty deductions imposed because [the claimant] failed to report certain events," and overpayment or underpayment of benefits. 20 C.F.R. § 404.902. This list does not include deductions for medical insurance premiums. See id. While the list set forth in § 404.902 is not exhaustive, it is not apparent to the Court that the SSA's $110 deduction for Medicare coverage would have constituted an initial determination.[19] The fact that the SSA's September 27, 2010 notice regarding this deduction did not inform Plaintiff of any right to appeal—while all of the other pertinent notices sent by the SSA in this action did—further suggests that it was not an appealable initial determination. See Infiesta Decl., Ex. 20; see also 20 C.F.R. § 404.904 (providing that written notice of "initial determination" will "explain in simple and clear language what [the SSA has] determined and the reasons for and the effect of [its] determination" and "also will inform [the claimant] of [his] right to reconsideration").

_____

[19] Section 404.903 sets forth a list of "[a]dministrative actions that are not initial determinations" which "may be reviewed by" the SSA but "are not subject to the administrative review process . . . and are not subject to judicial review. 20 C.F.R. § 404.903. While Medicare deductions also are not included here, the list in § 404.903 also is not exhaustive.

27

Fourth, to the extent that the SSA may have failed to act on Plaintiff's apparently timely June 12, 2009 request for a hearing on the SSA's May 25, 2009 retroactive DIB award determination, the SSA has represented that it currently is considering whether further administrative review of that determination is warranted.  Accordingly, there is no indication on the present record that administrative exhaustion of this claim will be futile.

Fifth, while Plaintiff argues that he sent various letters to the SSA regarding his request for ongoing monthly SSI benefits and that SSA employees suggested that any further appeal of the agency's determination with regard to such benefits would be futile, the record demonstrates that (1) Plaintiff did not submit a timely appeal of the SSA's August 25, 2009 denial of his request for reconsideration; (2) after receiving several letters from Plaintiff on this issue, the SSA invited Plaintiff, on December 7, 2009, to pursue further appeal of this determination, which Plaintiff failed to do; (3) after Plaintiff submitted a second, untimely request for reconsideration on April 14, 2011, the SSA informed him on September 14, 2011 that he no longer had a pending application for SSI benefits and invited him to file a new application seeking such benefits, which Plaintiff failed to do; (4) after Plaintiff commenced this action in September 2012, the SSA informed Plaintiff on January 16, 2013 that it was willing to construe his untimely April 14, 2011 request for reconsideration as a request for a hearing before an ALJ, to reopen his appeal on this determination, and to give Plaintiff an opportunity to demonstrate good cause for his having failed to pursue his appeal in a timely fashion; and (5) Plaintiff represented to the SSA on February 7, 2013 that he would not seek to further appeal its decision.

This record does not suggest that pursuing the administrative appeal process would have been futile for Plaintiff had he followed the requisite procedures about which he had been

informed.[20] See Salemo v. Comm'r of Soc. Sec., No. 11 Civ. 2830 (DAB)(JLC), 2012 WL

1019054, at *1–3 (S.D.N.Y. Mar. 27, 2012) (Report & Recommendation) (concluding that plaintiff

had not exhausted administrative remedies where, despite having sent five letters to the SSA

requesting reinstatement of benefits that the SSA had terminated, plaintiff had "never presented a

formal request to the SSA for review" and "there [was] no basis to assume that administrative

review would be futile" because, "[a]s the Commissioner observes," plaintiff "may still bring a

claim before the SSA" and "will have the opportunity to appeal any decision taken on his claim");

Gist, 2008 WL 4239593, at *3 (finding that "exhaustion would not be futile" where plaintiff

challenged the SSA's denial of SSI benefits based on plaintiff's alleged economic ineligibility due

to DIB income because plaintiff "could still pursue his administrative remedies by requesting an

extension of time from the SSA in which [to] do so" which "would give the SSA an opportunity to

correct any errors, afford the parties and the courts the benefit of the SSA's experience and

expertise, and result in a record that is adequate for judicial review").

  Plaintiff also has not established that the other exhaustion exceptions apply in this case.

While Plaintiff demands $975 septillion in money damages and "couches [his] claim[s] in terms of

'discrimination,'" Plaintiff is "actually claiming that the [SSA] did not properly review," and

---

[20] The Court also notes that it is unclear on the present record whether Plaintiff challenges the SSA's determination that he is ineligible for ongoing monthly SSI benefits due to his income based on (1) the general invalidity of the regulation setting forth the maximum income limit, which may suggest that administrative exhaustion would be futile because the SSA is bound by this regulation, or (2) the application of that limit to the particular facts of his case, which may suggest that administrative exhaustion would not be futile. See Okocha v. Disman, No. 11 Civ. 1854 (LTS)(JLC), 2012 WL 6860892, at *11 (Oct. 1, 2012) (Report & Recommendation), adopted by 2013 WL 163834 (S.D.N.Y. Jan. 15, 2013). Because the "precise basis" of Plaintiff's "challenge is unclear," exhausting the administrative appeal process "will enable [Plaintiff] to frame with greater precision any viable challenge to SSA's determination, to the extent there is one," "will clarify with finality SSA's factual and legal bases" for reaching the determination at issue, and will "'compile a record which is adequate for judicial review.'" Id. (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)).

improperly denied, his requests for benefits.  Wahrmann v. Comm'r of Soc. Sec., No. 6:13-CV-432

(TJM), 2013 WL 2428093, at *4 (N.D.N.Y. June 4, 2013).  Accordingly, his claims are not

collateral to his demands for benefits.  See Salemo, 2012 WL 1019054, at *3 (finding that

plaintiff's claim for reinstatement of benefits was "not collateral to a demand for benefits, but rather

[was] a claim for benefits itself and therefore not collateral to another claim"); Maloney v. Soc. Sec.

Admin., No. 02-CV-1725 (JFB)(SMG), 2006 WL 1720399, at *6 (S.D.N.Y. June 19, 2006) (finding

that "plaintiffs' claim for past due social security benefits is not collateral to a demand for

benefits"), aff'd 517 F.3d 70 (2d Cir. 2008).  Additionally, there is no indication that Plaintiff will

suffer irreparable harm if exhaustion is not excused, particularly given that Plaintiff has obtained

retroactive awards from the SSA in the past and is free to file new applications for benefits at any

time.  See Okocha, 2012 WL 6860892, at *11 (finding that, even where plaintiff's "severe

impairments, in conjunction with [his] manifest indigency, make clear that termination of benefits

has caused, and likely will continue to cause, serious hardship" to plaintiff, the "Court is

constrained by the exacting standard for waiver, which is 'irreparable harm,' not hardship" and

"[t]he fact that [plaintiff was] "disabled and indigent, without further detail regarding specific and

urgent financial or medical needs, does not permit the Court to conclude that requiring him to

exhaust administrative remedies would pose irreparable harm justifying waiver") (internal citation

omitted); Salemo, 2012 WL 1019054, at *4 (finding no excuse where plaintiff had "failed to

provide any evidence that he would suffer irreparable harm if required to exhaust the administrative

process"); Maloney, 2006 WL 1720399, at *6 (finding that "plaintiffs would not suffer irreparable

harm if required to exhaust the administrative procedures because they currently receive benefits").

Finally, Plaintiff has not alleged a plausible due process claim such that his failure to exhaust might

be excused.  See Salemo, 2012 WL 1019054, at *4.  While Plaintiff alleges that he did not receive

responses from the SSA to some of his requests, he has not presented any explanation for that failure, and the notices sent by the SSA reflect that they were sent to the addresses listed on Plaintiff's requests.

Because Plaintiff failed to administratively exhaust his claims, and because no exceptions excuse this failure, I conclude—and respectfully recommend that Your Honor should conclude—that the Court lacks subject matter jurisdiction over Plaintiff's claims for benefits.[21]

2.   *Plaintiff's Purported Civil Rights Claim*

Plaintiff's purported civil rights claim also fails.  First, "[t]here is no private right of action under the Social Security Act," and "Plaintiff is barred from bringing a civil action against the SSA for monetary relief based on violations of the Social Security Act."  Katsoulakis, 2011 WL 3877080, at *5.  Second, while "plaintiffs whose constitutional rights have been violated by employees of the federal government . . . may," in some cases, "recover money damages pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)," such claims may be asserted only against individual federal employees because federal agencies, such as the SSA, are immune from suit.  Id.  Moreover, even if Plaintiff had named any individual SSA workers as defendants in this action, his claim for money damages still would not be viable.  The "Supreme Court has held that social security claimants may not bring Bivens actions alleging violations of their constitutional rights" against SSA employees based on allegedly wrongful

---

[21] It also bears noting that, pursuant to the Act, a Social Security claimant must commence an action seeking federal district court review "within sixty days after the mailing to him of notice of [a final] decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  While the sixty-day filing requirement is subject to equitable tolling, such tolling requires a showing of extraordinary circumstance and due diligence.  See Torres v. Barnhart, 417 F.3d 276, 279 (2d Cir. 2005).  While the Commissioner has moved to dismiss only on the grounds that the Court lacks subject matter jurisdiction and that Plaintiff's complaint otherwise fails to state a claim, it also is apparent that Plaintiff commenced this action more than sixty days after receiving *any* decision from SSA.

denials of claims for benefits, id. at *6, because Congress already has established an "elaborate . . . system" for "provid[ing] meaningful safeguards" and "remedies" for such claimants. Schweiker v. Chilicky, 487 U.S. 412, 425 (1988); see also Kuforiji, 2012 WL 3656480, at *1 n.2 (dismissing "Plaintiff's purported claim for damages" because, whether raised "against SSA or its employees," the claim "fails because the Social Security Act provides the exclusive remedy for a claim, like that here, which stems entirely from SSA's determination of benefits"); Maloney, 2006 WL 1720399, at *9 (noting that "Schweiker Court refused to create a money damages remedy against social security officials").

Finally, to the extent that Plaintiff asserts claims of negligence or infliction of emotional distress against the SSA, these tort claims also must be dismissed. "The SSA cannot be sued for negligence based on the doctrine of sovereign immunity, which bars FTCA suits against federal agencies." Katsoulakis, 2011 WL 3877080, at *6 n.1; see also Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (noting that the "FTCA precludes tort suit against federal agencies and makes the only proper federal institutional defendant in such an action the United States"). Moreover, even if Plaintiff had named the United States as a defendant in this action, the Commissioner has no records indicating that Plaintiff presented an administrative tort claim to the SSA as is required prior to bringing suit pursuant to the FTCA, and Plaintiff does not allege otherwise. While Plaintiff argues in opposition that he presented his claims to the SSA by "ke[eping] the 'SSA' up to date with [his] sufferings and how [he] was even evicted in 2010" and that the agency, therefore, was "very well aware of the damages" it had caused, Oji Aff. at 2, this argument does not establish that Plaintiff administratively exhausted any potential FTCA claims. See Ledford Decl.; 28 U.S.C. § 2675(a) (providing that FTCA claim may not be initiated in federal court "unless the claimant shall have first presented the claim to the appropriate Federal agency and

his claim shall have been finally denied by the agency in writing"); see also Okocha, 2012 WL 6860892, at *13 ("[E]ven if the Social Security Act did not independently bar [plaintiff's] punitive damages claim, his failure to establish FTCA exhaustion does.").

Accordingly, I conclude—and respectfully recommend that Your Honor should conclude—that any civil rights claim which may be construed from the complaint also should be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's motions for judgment be **DENIED** and that the Commissioner's motion to dismiss be **GRANTED**.

Dated: September 12, 2013
White Plains, New York

Respectfully submitted,

Paul E. Davison
United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the

chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

A copy of the foregoing Report and Recommendation has been mailed to:

Charles Ojih Oji
47 Riverdale Avenue
Apt. #A3-15
Yonkers, NY 10701